BARNETTE, Judge.
This is an appeal by Fidelity General Insurance Company of Chicago from a judgment of $5,000 in favor of Frank J. Campanella, its insured and third-party plaintiff herein, under the provisions of the uninsured motorist clause in his liability insurance policy issued by Fidelity General. The cause of action arose out of an automobile collision on January 17, 1965, between an automobile driven by the minor plaintiff, Felix Botsay, and a taxicab owned and driven by Frank J. Campanella.
Suit was filed initially by Louis A. Bot-say on behalf of his minor son Felix against Campanella and his insurer, Fidelity General, to recover damages allegedly sustained by the minor, Felix Botsay. The defendants answered denying liability and affirmatively pleading in the alternative the contributory negligence of the plaintiff. By a separate pleading the defendant Campanella answered and assumed the position of plaintiff in reconvention against Louis A. Botsay and of third-party plaintiff against his insurer, Fidelity General, seeking recovery on the uninsured motorist provision of his policy for the personal injuries sustained by him. Fidelity General answered the third-party petition of Campanella denying liability and in turn making Botsay its third-party defendant for such sums as it may be cast in favor of Campanella. Subsequently Fidelity General amended its answer and third-party pleading to allege that the negligence of Campanella was the sole cause of the accident, or, in the alternative, a contributing cause barring his recovery on the uninsured motorist clause.
When the case was called for trial the original petitioner dismissed his petition leaving as the only issues for trial Campanella’s reconventional demand against Bot-say (which was not contested) and the issue between Campanella and Fidelity General on the uninsured motorist provision of the policy. The third-party petition of Fidelity General against Botsay was not mentioned at trial and the judgment is silent thereon. It will, therefore, be treated as denied. Soniat v. Whitmer, 141 La. 235, 74 So. 916 (1917); Brady v. American Insurance Company, 198 So.2d 907 (La.App. 4th Cir. 1967); Watt v. Stann, 195 So.2d 343 (La.App. 4th Cir. 1967); Mexic Bros., Inc. v. Sauviac, 191 So.2d 873 (La.App. 4th Cir. 1966).
There was judgment in favor of Campanella, as plaintiff in reconvention against Botsay and as third-party plaintiff against Fidelity General, in solido, in the amount of $5,000 (the limit of the uninsured motorist coverage), and against Botsay individually for the additional amount of $9,-967.85. Botsay did not appeal. Fidelity General perfected a suspensive appeal from the judgment in Campanella’s favor against it. No mention is made either in the petition or the order for appeal or in the bond indicating an intent to appeal from that portion of the judgment which by silence rejected Fidelity General’s third-party demands against Botsay. Furthermore, when Fidelity General filed its amended answer to Campanella’s third-party petition, it alleged that Campanella’s negligence was the “sole cause and or contributing cause of the accident * * *.” Thus it effectively negated its former alleged cause of action against Botsay. It is *109 apparent that Fidelity General intended to abandon its third-party petition against Botsay. Accordingly, the only issue we will consider herein is that of liability of Fidelity General to Campanella on the uninsured motorist provision of the policy.
There is no issue of quantum since the policy limit is $5,000 and Campanella’s injuries justify an award of damages quite in excess thereof. Furthermore, it is admitted that Botsay was an uninsured motorist. Therefore, the only issue on this appeal is negligence. As stated above, appellant contends that Campanella’s negligence was the sole cause of the accident, or alternatively, that his contributory negligence bars his recovery. It pleads error of the trial court in not so finding as a fact.
The accident occurred at the intersection of North Carrollton Avenue and Dumaine Street in the City of New Orleans at about 10 p.m., on January 17, 1965. North Car-rollton Avenue is a wide paved thoroughfare running in a generally north-south direction, and consists of two roadways (each approximately 30 feet wide) divided by a neutral ground. Dumaine Street is a paved street (28 feet in width) and runs in a generally east-west direction. North Carrollton Avenue is the favored thoroughfare which is so indicated by stop signs posted on Dumaine Street. Campanella was traveling on Dumaine Street in a southeasterly direction and the Botsay vehicle was traveling on North Carrollton in a southwesterly direction. The collision occurred in the intersection.
In his reasons for judgment, the trial court judge found the following material facts which we quote and adopt as a part of this opinion:
“As matters of fact, the Court found:
(1) That Campanella had been driving his taxi on Dumaine toward the Mississippi River and upon reaching North Carrollton, he halted for a stop sign;
(2) That there were other vehicles parked along the curbing to Campanella’s left, partially blocking the view of traffic proceeding on North Carrollton toward Canal Street;
(3) That Campanella slowly nosed his taxi into the intersection, to obtain a better view, and brought his cab to a stop;
(4) That, meanwhile, the 1957 Chevrolet driven by young Felix Botsay was approaching on North Carrollton (toward Canal) at an excessive rate of speed and in the lane nearest the North Carrollton neutral ground; and
(5) That when he saw Campanella, Botsay vigorously applied his brakes, causing his car to swerve to the right and collide with Campanella’s taxi.
“Had Botsay remained in the lane he had been driving in, there would have been no collision.
“The policeman who testified, Harold Wilson, said that Campanella had driven about eight (8') feet past the North Car-rollton curbing before the impact, meaning that he couldn’t have been close to Botsay’s original lane, the one nearest the neutral ground. There are three lanes (in each direction) on North Car-rollton. The police officer estimated Botsay’s speed at 45-50 miles per hour.
“The impact was considerable and knocked Campanella’s taxi 78 feet from the spot where the collision occurred. Botsay’s car left 62 feet of dark skid marks and an additional 15 feet of lesser skid marks.
“The proximate cause of this accident, in the Court’s opinion, was Botsay’s excessive speed and the fact that he was unable to control his car after applying pressure to the brakes. With traffic partially blocking Campanella’s view of North Carrollton, the Court believes that Campanella acted reasonably in inching forward for a better view, and then bringing his car to a stop when he saw Botsay approaching in the lane nearest the neutral ground at a high rate of speed.
*110 “The physical facts indicate that Bot-say was driving at an excessive rate of speed; also, the testimony of two witnesses substantiates this. Further, the Court was definitely more impressed with Campanella’s testimony than with Botsay’s.
“The two neutral witnesses said that Botsay was alone in his automobile at the time; Botsay said that he had two passengers and they testified at the trial. The neutral witnesses (Mr. and Mrs. Ronald Powell) testified in a straightforward, apparently truthful manner and said that after the collision, another car arrived at the scene and this auto, not Botsay’s contained the alleged Botsay passengers.
“Mr. and Mrs. Powell, who were the first to arrive at the scene after the accident, said that the other boys reached the collision site approximately ten minutes after they (the Powells) did. This isn’t significant insofar as the negligence aspect is concerned, but it did assist the Court in arriving at a credibility decision.
“The accident happened on January 17, 1965, at about 10 p.m. There was no traffic on North Carrollton other than Botsay’s car and he easily could have avoided Campanella’s cab, had he not abruptly veered to his right. After applying the brakes, Botsay’s car came out of the lane nearest the neutral ground, crossed a middle lane of North Carroll-ton and then hit the cab.”
We are not fully convinced that the alleged fellow passengers of Felix Botsay were not in the car with him at the time of the accident. It is possible that Mr. and Mrs. Powell, in the excitement of the moment, could have been mistaken as to when or how they came upon the scene. But it is of no great significance since their testimony sheds no light on the incident of material help in determining how the accident happened.
Counsel for appellant strenuously argues in this court that Campanella was at least guilty of contributory negligence in proceeding into the favored thoroughfare without first ascertaining that he could complete his crossing safely, and that his duty of care is not satisfied alone by stopping in obedience of the traffic sign, citing Plummer v. Traders & General Insurance Company, 183 So.2d 467 (La.App. 3d Cir. 1966). He also argues that Campanella was negligent in failing to see that which he should have seen and in proceeding heedlessly into the path of the oncoming vehicle which, if he did not see, was the result of his own negligence. He cites the following cases : American Insurance Company v. Speights, 206 So.2d 295 (La.App. 1st Cir. 1968) ; American Road Insurance Company v. Irby, 203 So.2d 427 (La.App. 2d Cir. 1967); Herbert v. Travelers Insurance Company, 179 So.2d 513 (La.App. 3d Cir. 1965); James v. State, 154 So.2d 497 (La.App. 4th Cir. 1963) ; Hickman v. Bawcom, 149 So.2d 178 (La.App. 3d Cir. 1963); Askew v. Hamilton, 146 So.2d 471 (La.App. 3d Cir. 1962); Central Louisiana Electric Company v. Hodges, 137 So.2d 132 (La.App. 3d Cir. 1962); Chase v. Burley, 76 So.2d 587 (La.App. 2d Cir. 1954). Finally, appellant pleads the doctrine of last clear chance, citing Gregoire v. Ohio Casualty Insurance Co., 158 So.2d 379 (La.App. 1st Cir. 1963); Croom v. Pittsburgh Plate Glass Company, 148 So.2d 123 (La.App. 2d Cir. 1962).
The principles of law upon which appellant relies are thoroughly sound, and the cases cited, plus many more in our jurisprudence, are good examples of their application in proper factual situations. The question here, however, is whether the facts in this case call for the application of the principles enunciated.
Counsel for appellant argues that Campanella was the only witness who testified that he brought his vehicle to a stop before entering North Carrollton Avenue. Opposed to this, he argues, is the testimony of Felix Botsay, his two alleged companions, and a passenger in the taxicab, Anthony S. *111 Latino. He places special emphasis on the testimony of Latino.
As to young Botsay and his alleged companions, we think the trial judge properly appraised their testimony. They did not see the Campanella vehicle until it was partly into the intersection, and hence have no knowledge of whether or not it stopped before entering. In his reasons for judgment, the trial judge did not mention the witness Latino who testified that he “* * * ¿id notice the cab went across the stop sign * * He was preoccupied with his thoughts and was not paying particular attention to the cab’s movements, which he described as normal. His first awareness of the presence of another vehicle in the intersection resulted from Campanella’s sudden profane exclamation, and at that moment the impact occurred.
The witness Latino was not, however, a disinterested party. He was Campanella’s passenger and brought a suit for damages for personal injuries as a result of the accident. It was very material to his interest that Campanella’s negligence be established. On the question as to whether Campanella violated the stop sign, we therefore have only his testimony against that of Latino, who had an opposing self-interest and who admittedly was paying no particular attention to the cab’s movement. We therefore find no manifest error in the trial judge’s acceptance of Campanella’s testimony.
This court has had occasion many times to apply the principles of law upon which appellant relies, and we have held that stopping before entering the intersection of a favored street is not enough when the motorist negligently failed to see oncoming traffic which he should have seen in such proximity to the intersection that he could not reasonably expect to cross in safety. Four such cases recently decided by this court are: Sicard v. Braud, La.App., 182 So.2d 821 (1966); Messana v. Allstate Insurance Company, 182 So.2d 93 (1966); James v. State, supra; and Mentel v. Boston Insurance Co., 144 So.2d 441 (1962). In each of those cases we found factual situations of unobstructed view where there was no reason why the motorist entering the favored street should not have seen the oncoming vehicle. In this case, however, we find that Campanella’s view was obstructed by parked automobiles and that he could not see the oncoming Botsay automobile traveling at an excessive speed. He entered with caution and traversed no more than a sufficient part of the three-lane thoroughfare to a point of unobstructed vision and then stopped again leaving sufficient clearance in the two other traffic lanes for the Botsay vehicle to pass safely, except for Botsay’s negligence. Campanella had no choice but to enter cautiously as he did or not attempt at all to traverse the intersection. The latter choice would impose an unreasonable burden on motorists in such situations.
For the foregoing reasons the judgment appealed from is affirmed at appellant’s cost.
Affirmed.