441 So.2d 342 (1983)
Mary J. CLONEY
v.
Kevin G. SMITH, et al.
No. 83-CA-396.
Court of Appeal of Louisiana, Fifth Circuit.
November 9, 1983.
*343 Raymond L. Hess, New Orleans, for Kenneth J. Smith defendant-appellant.
Daniel A. Ranson, Windhorst, Pastorek & Gaudry, Gretna, for Aetna Ins. Co. defendant-appellant.
Fred L. Herman and Mark R. Wolfe, Herman, Herman & Katz, New Orleans, for Mary J. Cloney plaintiff-appellee.
Before BOUTALL, CHEHARDY and GAUDIN, JJ.
BOUTALL, Judge.
This case arises from an automobile accident at a controlled intersection. From a judgment in favor of plaintiff, the defendants have taken this appeal.
On May 13, 1980, Mary J. Cloney ("Mrs. Cloney"), the plaintiff, was proceeding north on Focis Street in Metairie and Kenneth G. Smith ("Smith") was driving east on Canal Street toward Metairie Road. Focis Street has a stop sign at the intersection, while Canal Street traffic has the right-of-way. Canal Street is a four-lane boulevard with a canal separating the inbound and outbound lanes. Smith's car collided with the front left of Mrs. Cloney's car in the left lane of the inbound roadway and Mrs. Cloney sustained injuries requiring her hospitalization.
Mrs. Cloney's car was insured by Aetna Insurance Company. Smith's car was allegedly uninsured and was registered to his brother, Dwight Brautigam ("Brautigam"), who had given the car to him. Mrs. Cloney claimed property damage, which Aetna paid timely. The policy contained no medical payments provision, but Mrs. Cloney made a claim for her personal injuries under the uninsured/underinsured provisions of the policy. Aetna did not pay the claim on grounds that they were unable to find Mrs. Cloney free from fault. Aetna did pay the property damage claim of defendant Smith.
Suit for damages was filed on April 16, 1981 against Smith, Brautigam, XYZ Insurance Company and Aetna, demanding penalties and attorney's fees from Aetna for failure to pay under the uninsured/underinsured coverage. Aetna answered and filed a third party complaint for indemnification against Smith and Brautigam. The case was heard before a judge and on July 12, 1982 judgment was rendered in favor of the plaintiff against Aetna for $5,000 (the policy limits for uninsured motorist coverage), $5,000 in attorney's fees, $1,250 in penalties calculated at 25%, and costs; and against Kenneth Smith for $30,000 plus costs. Judicial interest was to run from date of judicial demand. The two defendants were cast jointly, severally, and in solido for expert *344 fees, court costs, and depositions used at trial. The trial judge stated in his reasons for judgment that Aetna was entitled to full indemnity against Smith, except for penalties and attorney's fees; this provision was apparently inadvertently omitted from the judgment itself.
The brief filed by Aetna was adopted by counsel for Smith. The following issues are before this court: whether Smith's negligence was the legal cause of the accident, or whether Cloney was negligent or contributorily negligent; whether the uninsured status of Smith was proved; and, if the plaintiff is entitled to recover against Aetna, whether she is entitled to attorney's fees and penalties. Aetna also asks for a judgment of indemnity against Smith.
Cause of Accident
We first consider the cause of the accident and the negligence or not of the parties. In its reasons for judgment the court said:
"Mary Cloney's testimony, and that of the passenger and independent witness, clearly indicates that she acted cautiously and prudently under the circumstances. The Court finds that the sole and proximate cause of the collision was the negligence of Smith in the careless operation of his vehicle and excess speed."
The defendant, Smith, received a citation for driving 46 miles per hour in a 35 mile per hour zone, to which charge he pleaded guilty and paid the fine. The plaintiff, Mrs. Cloney, was cited for disregarding a stop sign but testified that the ticket was canceled. The actual disposition of Mr. Cloney's ticket is uncertain as no corroborating documents were produced.
Smith had entered Canal Street from Rosa Avenue, the next intersection down from Focis. He testified that he saw Mrs. Cloney approaching the stop sign at Focis when he was about 100 feet from the intersection. She slowed and hesitated. He slowed down, blew his horn. She stopped. He saw that the front of her car was blocking the right lane and moved to the left, slowing to 30 miles per hour. Mrs. Cloney then suddenly came out of the stop sign in front of him, whereupon he slammed on his brakes and skidded. Smith insisted that he had traveled at a speed no greater than 35 miles per hour. Smith, a Nicaraguan, had lived in New Orleans only a year at the time of the accident and said that he pleaded guilty to the speeding citation because he did not understand Traffic Court and had no attorney.
The testimony of two independent eye-witnesses, Arnaud Dufrechou (who testified by deposition) and Lois Schroeder, both of whom saw the accident from the other side of Canal Street, indicated that Mrs. Cloney had stopped at the stop sign and that the Smith vehicle came "from nowhere" after Mrs. Cloney had started across. Both witnesses testified to hearing an engine noise before seeing Smith's car. Mrs. Cloney and Mabel Allison, her sister and passenger, said that there was a clear view to the left on Canal Street and that they neither heard nor saw Smith's car prior to the impact. Sergeant Fred Falgout, who investigated the accident at the scene, testified that on the basis of skid marks from Smith's tires he estimated a speed of 46 miles per hour.[1] The defense urges that Mrs. Cloney failed to see what she should have seen and that she was distracted by a vehicle approaching the intersection across the canal from the right. Mrs. Allison testified that after they saw the vehicle across the canal she looked back to the left, saw nothing coming toward them and told Mrs. Cloney to go ahead. The plaintiff argues that she could not have seen Smith's car because it had not yet entered Canal Street from Rosa Avenue, a long block to the left of Focis Street; further, that she could not have pinpointed the direction of Smith's engine sound because of other car noises coming from nearby I-10.
*345 The applicable statute in the case of a driver entering the favored street from the nonfavored street at a controlled intersection is found at La.R.S. 32:123 B, which provides, in pertinent part:
"B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop ... at the point nearest the intersection roadway where the driver has a view of approaching traffic on the intersection roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard."
The court in its reasons for judgment summarized the jurisprudence regarding crossing an intersection from an unfavored street, as follows:
"The jurisprudence in this state is settled that a motorist who enters the intersection of a right of way street, may upon observing the yield or stop sign, then proceed across the favored street or turn into the favored street and assume that vehicles approaching on that street will observe the speed limit. Botsay v. Campanella 224 So.2d 107 (La.App. 4th Cir. 1969); Barry v. Billac 250 So.2d 516 (La. App. 4th Cir.1971); Camet v. Guillot 291 So.2d 438 (La.App. 4th Cir.1974); Zager v. Allstate Ins. Co. 211 So.2d 744 (La.App. 3rd Cir.1968) and decisions cited therein."
The cases cited above all apply the "reasonably prudent and cautious person" test to the crossing driver's behavior.
The appellant cites several cases as authority for finding negligence on Mrs. Cloney's part: Burge v. Doty, 279 So.2d 273 (La.App.2d Cir.1973), writ refused 281 So.2d 757 (La.1973); Audubon Insurance Company v. Knoten, 325 So.2d 624 (La.App. 4th Cir.1976); and Follins v. Barrow, 354 So.2d 609 (La.App. 1st Cir.1977), writ refused 356 So.2d 434 (La.1978). All are cases involving drivers who were entering a favored street from an unfavored street and failed to discharge the duty to see what they should have seen. These cases may be distinguished from the present case because the driver on the favored street was traveling at a lawful speed.
Counsel for the appellee relies on the case of Thomas v. Checker Cab Company of New Orleans, 87 So.2d 605 (La.1956) as authority for finding that Mrs. Cloney was not negligent. There, the driver on the unfavored street was held to be negligence-free when he failed to see an oncoming vehicle that was speeding and was over 100 feet away from the intersection when the driver ventured across. The court said that the driver had the right to assume that an oncoming vehicle that was out of his range of vision would be driving properly and within the speed limit. Finding the speeding driver's negligence to be the sole and proximate cause of the accident, the court said of the entering driver, at 607:
"... Having preempted the intersection after stopping, looking, and ascertaining that there was no apparent danger, he had the right of way over a vehicle ... approaching from his right, even though this vehicle was being operated on a right-of-way street. Booth v. Columbia Casualty Co., 227 La. 932, 80 So.2d 869, and authorities there relied on."
Barry v. Billac, supra, cited by the court, contains similar facts.
The doctrine of preemption applies in favor of the entering driver only if he has maintained a proper lookout and enters the intersection when it is reasonably safe to do so. Burge v. Doty, supra; Semien v. State Farm Auto. Ins. Co., 398 So.2d 165 (La.App. 3rd Cir.1981). The right of way driver who is speeding and fails to yield to an entering motorist who has lawfully preempted the favored street will be held negligent. Moss v. Travelers Indem. Co., 351 So.2d 290 (La.App. 3rd Cir.1977), writ refused 353 So.2d 1036 (La.1978); Nagem v. State Farm Mutual Insurance Company, 280 So.2d 353 (La.App. 3rd Cir.1973); Gauthier v. Fogleman, 50 So.2d 321 (La. App. 1st Cir.1951).
*346 We conclude that the record in this case supports the trial judge's finding that Smith was at fault and that Mrs. Cloney was not negligent. He determined that Mrs. Cloney saw the way was clear and cautiously entered the intersection with no visible danger. Smith pulled into the right of way street from a side street at a rapid speed and failed to stop and yield the right of way to Mrs. Cloney's vehicle, choosing instead to attempt to go around in the left lane. As a factual determination of this sort becomes a question of credibility, the trier of fact is in a better position to evaluate the testimony of live witnesses. His findings of fact may not be overturned in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
Uninsured Motorist Status
The appellant complains that the appellee failed to carry her burden of proof that Brautigam and Smith were uninsured. Brautigam testified that he had carried insurance on the car earlier but discovered that the policy had expired when he checked it after the accident. He and Smith both stated that they were uninsured in their answers to interrogatories. As Aetna failed to file a third-party claim against Brautigam's former insurer, we find no merit in its allegation that Smith's vehicle was insured. Sworn and uncontradicted testimony of the owner has been accepted as proof that a vehicle was uninsured. Launey v. Thomas, 379 So.2d 27 (La.App. 3rd Cir.1979), writ refused, 381 So.2d 1233 (La.1980).
Arbitrary and capricious failure to pay claim
LSA R.S. 22:658 provides that an insurer that refuses to pay a claim within sixty days after receiving satisfactory proofs of loss and demand, without probable cause, will be subjected to a penalty and attorney's fees.
The appellant urges that there were contested issues in the case, including negligence and contributory negligence, uninsured motorist status, last clear chance, and post-accident injuries. The court found that Aetna was arbitrary and capricious in not paying the claim because it neither conducted a careful investigation nor tendered the policy limits after suit was filed, when the plaintiff had submitted proof of severe injuries for which the medical expenses exceeded $5,000.
A liability insurer is obligated to act in good faith and to deal fairly with its insured in settling claims. Holtzclaw v. Falco, Inc., 355 So.2d 1279 (La.1978). The court assessed penalties against the insurer in Lapeyrouse v. Pilot Life Ins. Co., 369 So.2d 1128 (La.App. 1st Cir.1979), for with holding payment of a health claim with insufficient investigation.
Courts have rarely applied the penalty provision to claims against uninsured motorist coverage. The issue was considered by the Supreme Court in September in the case of Hart v. Allstate, 437 So.2d 823 (La. 1983).[1] The Court denied penalties and attorney's fees for the insurer's failure to pay timely injury claims under the plaintiff's uninsured motorist coverage.
The Court acknowledged that LSA R.S. 22:658 does apply to uninsured motorist coverage, as it is a "contract" within the purview of the statute, but stated that because of the statute's penal nature it must be strictly construed. The Court specified the requirements for recovery of damages under uninsured or underinsured motor vehicle insurance, as follows, at 9:
"... [T]o establish a `satisfactory proof of loss' of an uninsured motorist claim, the insured must establish that the insurer receive sufficient facts which fully apprise the insurer that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, that he was at fault, that such fault gave *347 rise to damages and establish the extent of those damages."
A strict reading of the Court's decision suggests that the burden is on the insured to establish that the uninsured driver was at fault and he was not. As the coverage was made mandatory in the public interest we do not believe that the Legislature intended, by placing the burden on the insured, to make it possible for the insurer to delay payment by failing to investigate a claim.
Where uninsured motorist coverage is part of a liability policy, the insurer's first duty is to its own insured, to defend him as well as the company against the claims of third parties. But when that insured makes a claim against his uninsured motorist coverage, the insurer's self-interest places it in an adversary position to its insured; it is in the company's interest to find the third party was not at fault or that its insured was contributorily negligent. We question whether the legislature intended that such a shift in position should occur when an insured makes a claim against his uninsured motorist coverage.
In the case at hand, the insurer glaringly ignored its responsibility toward its insured. Mary Lacy, Aetna's claims adjuster, admitted that she did not interview the plaintiff, or key witnesses other than the defendant, or the investigating officer. She testified that she concluded Mrs. Cloney was at fault and Smith free from fault on the basis of a telephone interview with Smith and a review of the police report. She discounted the written statement of a witness, Arnaud Dufrechou, which directly contradicted Smith's statement.
We distinguish our case from Hart v. Allstate, supra, on the grounds that Mrs. Cloney and her counsel had supplied the insurer with sufficient factual information on which to base an investigation and had notified it of the uninsured status of the defendant. In Hart, the plaintiff had delayed in sending in medical bills and forms and had failed to notify the insurer that the defendant was legally intoxicated. It delayed notifying the insurer that the defendant was uninsured. However, the adjuster in Hart had interviewed the plaintiff, the defendant, and the investigating officer. In our case, the adjuster had conducted such a cursory investigation that it had no basis for concluding that Mrs. Cloney was negligent or even that there was a dispute as to fault.
We are in agreement with the trial court's finding that Aetna was arbitrary and capricious in its failure to pay Mrs. Cloney's claim and is liable for a penalty and attorney's fees under LSA R.S. 22:658.
The parties stipulated at the hearing of the appeal that the correct penalty under LSA-R.S. 22:658 is 12% on the total amount of the loss plus reasonable attorney's fees rather than 25% as written in the judgment. Although the appellant complains that an award of $5,000 in attorney's fees is clearly excessive, we believe the length of the trial and the hours in depositions justified the award, when considered along with the skill of the attorney, the results reached, etc.
Accordingly, we amend the judgment appealed from and as amended affirm. That portion of the decree finding in favor of plaintiff, Mary J. Cloney and against defendant, Aetna Casualty and Surety in the amount of $11,250 plus cost is amended to read as follows:
"It Is Ordered, Adjudged and Decreed that there be judgment herein in favor of plaintiff, Mary J. Cloney and against defendant, Aetna Casualty and Surety in the amount of $5,000, together with $5,000 attorney's fees and $600 penalty, plus cost."
We amend the judgment further to add that there be judgment in favor of Aetna Casualty and Surety against Kenneth G. Smith in indemnity for such sums as Aetna may pay under the judgment, exclusive of penalty and attorney fees.
Costs of this appeal are assessed against Aetna Casualty and Surety and Kenneth G. Smith.
AMENDED AND AFFIRMED.
NOTES
[1] To make this calculation Falgout measured the length of skid marks of Smith's four tires, finding an average of 95 feet, then applied a "drag factor" (coefficient of friction) of .70 for a dry asphalt traveled road at a speed greater than 30 miles per hour. The tables he referred to appear in the Northwestern Traffic Manual.
[1] Court of Appeal citation is 426 So.2d 711 (La.App. 1st Cir.1982), writ granted 431 So.2d 2