CHEHARDY, Judge.
Plaintiff, James J. Martin, instituted this suit for personal injuries resulting from an automobile accident which occurred about midnight on May 1, 1982 near the intersection of West Esplanade Avenue and Bonria-bel Boulevard in Metairie, Louisiana. Named defendants were Robert W. Davis, owner of the other vehicle involved, and his liability insurer, United Services Automobile Association. The vehicle was driven by Virginia Davis, Mr. Davis’ 19-year-old daughter.
Defendants answered in the form of a general denial, alternatively pleading comparative negligence and assumption of the risk. They filed a reconventional demand for property damages to the Davis vehicle, naming as defendants-in-reconvention Mr. Martin and his insurer, Allstate Insurance Company.[1]
The matter was tried by a jury which found 100-percent negligence on the part of Mr. Martin and no negligence on the part of Miss Davis. Thereafter judgment was rendered in favor of defendants dismissing plaintiff’s suit on the main demand, and in favor of plaintiff’s in reconvention in the sum of $562.67 for the property damage claimed.
Plaintiff and Allstate then filed a motion for judgment notwithstanding the verdict, or in the alternative, a motion for a new trial. The motions were denied.
Plaintiffs-in-reconvention (Mr. Davis and his insurer) received payment for the property damages awarded by the judgment, and the docket was marked satisfied as to that claim. Plaintiff has appealed from the judgment insofar as it dismisses his suit on the main demand.
While some of the facts are in dispute, these facts appear to be uncontroverted.
Plaintiff had just left the Yacht Club, located in West End, New Orleans, and was traveling westbound on West Expla-nade Avenue in Metairie on his way home to Kenner. He claims to have had no alcoholic beverages while at the club.
Miss Davis and her guest passenger, Keller Kudler, also a minor, had attended a family party for a friend in Metairie and were on their way home. Miss Davis claims to have had one beer much earlier in the evening. They were travelling on Bon-nabel Boulevard in the direction of the river. There is no evidence that any of the people involved in the accident were drunk.
Both vehicles were headed toward the intersection of Bonnabel and West Esplanade. This intersection is governed by a traffic light and all of the witnesses agree it was green for vehicles travelling on West Esplanade.
From this point on, the facts are in dispute.
Miss Davis’ version of the accident is that she stopped for the red light at Bonna- *951 bel, looked to her left and saw two sets of headlights on automobiles proceeding on West Esplanade toward the Bonnabel intersection. The automobiles were some distance away so she made a wide turn into the left-hand lane of traffic on West Esplanade. Her car does not have automatic transmission. For that reason she did not make a sharp turn into the right-hand lane, however when she looked into her rearview mirror after having completed her turn, she saw defendant’s car coming with great speed in the left lane, so she moved over to the right-hand lane to let him pass. However as she did so he attempted to change lanes to pass her on the right. Instead, the right front of his car struck the right back of her car on the passenger side.
After the collision Miss Davis and Kuhler were very frightened because it was late at night. She did not want to stop because of a prior bad experience. She later stopped and defendant flashed a badge, which also frightened her. Two other people who were witnesses to the accident also stopped and the police were called to investigate the accident.
Plaintiffs version of the accident is that he was travelling 30 to 35 miles per hour on West Esplanade. He does not remember if there was any other traffic on West Esplanade, although there might have been. As he approached the traffic light it was green for West Esplanade traffic. He saw a car stopped on Bonnabel coming from the other lane at the light. This car proceeded across the intersection and then he saw a small sports car (defendant vehicle) turn at the red light. He claims his vehicle hit her car just as she turned right at the intersection.
The ear did not stop. He chased it four blocks and asked the driver to pull over. She pulled over somewhat but took off again until he caught up with her eight or nine blocks away.
There were two independent witnesses who testified on behalf of defendants: Paul Tymphony and Lisa Ann St. Pierre. These witnesses were travelling on West Esplanade proceeding in the direction of Bonna-bel in the left-hand lane of traffic, travel-ling about 30 to 40 miles per hour.
The witnesses stated plaintiff vehicle pulled up behind them. Its bright lights were on. The automobile passed them on the right-hand side and as it did so, plaintiff “shot them the bird.” Plaintiff appeared to be hollering at them from his vehicle but they could not hear what he was saying. This incident occurred one or two blocks before the intersection.
Afterward these witnesses saw plaintiff flick his lights and weave in and out of traffic. Mr. Tymphony, who was driving the car with his date Miss St. Pierre as guest passenger, saw the plaintiff vehicle try to go around the defendant automobile on the wrong side of the road as Miss Davis was making the turn and he saw plaintiff hit the sport car. Miss St. Pierre did not see the accident, but knew it was the same car that had passed them and had been weaving in and out of traffic.
The witnesses followed plaintiff and defendant cars and stopped when they stopped. Plaintiff indicated to Miss Davis and Mr. Tymphony that he was a police officer, although there is no evidence in the record to indicate that he was. Plaintiff was annoyed when Tymphony berated him for travelling 65 miles an hour, telling him to keep out of it.
It appears from the jury findings that they accepted the testimony of Miss Davis and Mr. Tymphony, particularly in regard to speed and found plaintiff totally at fault in the accident.
In this court appellant contends the jury and/or the trial court erred in:
1. failing to find Miss Davis negligent and/or contributorily negligent;
2. failing to grant plaintiffs motion for a directed verdict;
3. failing to grant plaintiffs motion for judgment notwithstanding the verdict;
4. alternatively, failing to find comparative negligence; and
*952 5. finding plaintiff 100-percent negligent and the sole proximate cause of the accident.
Relative to appellant’s first, fourth and fifth contentions, the jurisprudence in this state is settled that a motorist who enters the intersection of a right-of-way street, may, upon observing the yield or stop sign, then proceed across the favored street or turn into the favored street and assume that vehicles approaching on that street will observe the speed limit. Cloney v. Smith, 441 So.2d 342 (La.App. 5th Cir. 1983); Camet v. Guillot, 291 So.2d 438 (La.App. 4th Cir.1974); Barry v. Billac, 250 So.2d 516 (La.App. 4th Cir.1971); Botsay v. Campanella, 224 So.2d 107 (La.App. 4th Cir.1969); and Zager v. Allstate Insurance Company, 211 So.2d 744 (La.App. 3d Cir.1968).
The test of the responsibility of the driver of an automobile in entering a favored street is not the actual speed he was going but whether the motorist entering an intersection in front of an oncoming automobile acted as a reasonably prudent and cautious person would have done under the circumstances. Barry v. Billac, supra; Zager v. Allstate Insurance Company, ibid; Picataci v. Guittierez, 163 So.2d 130 (La.App. 4th Cir.1964); and Easter v. Davis, 153 So.2d 463 (La.App. 4th Cir.1963). We feel Miss Davis acted cautiously under the circumstances and complied with the “prudent driver” rule.
A person who enters the intersection of a right-of-way street from a less favored street may, upon observing a yield or stop sign, proceed and assume that vehicles approaching on that street will observe the speed limit, and a motorist relying on that assumption will not be held contributorily negligent for his failure to estimate the other driver’s speed. Barry v. Billac, supra.
In view of the jurisprudence the jury was not wrong in concluding Miss Davis properly discharged her responsibility as a motorist and was therefore not contribu-torily negligent. Their finding that the sole proximate cause of the accident was the negligence of the plaintiff and his careless operation of the vehicle is substantiated in the record by the testimony of the independent witnesses.
Plaintiff further complains that the law of comparative negligence applies. Since the jury found plaintiff 100% negligent and the judgment supports that finding, comparative negligence is inapplicable here.
Nor do we agree with appellant’s second contention.
After all of the evidence had been presented, and prior to turning the matter over to a jury, plaintiff moved for a directed verdict summarizing the testimony for the trial judge.
The judge refused to grant the motion because of the testimony of witnesses placing plaintiffs speed at 65 miles per hour. Plaintiff argued that speed was irrelevant. We disagree. The alleged speed of the vehicles was an important finding of fact and the trial court was correct in refusing to grant a directed verdict.
Relative to appellant’s third contention, LSA-C.C. art. 2323 permits the judge to render a judgment notwithstanding the jury verdict. He may do so when, after evaluating the law applicable to the facts and the evidence, he concludes the jury has failed to act in accordance with law. The trial court obviously found no error and we agree with his conclusions.
For the reasons assigned the judgment appealed from is affirmed.
AFFIRMED.

. When plaintiff concluded the presentation of his case his counsel made an oral motion for a directed verdict. The judge refused to grant the motion citing testimony which placed plaintiff's speed at 65 miles per hour.