496 So.2d 1274 (1986)
James RACHAL, et al., Plaintiffs-Appellees
v.
Obiora AGUDOSI, et al., Defendants-Appellants
No. 85-1219.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Larry P. Boudreaux, Thibodaux, for defendants-appellants.
Felix A. Dejean, III, Opelousas, for plaintiffs-appellees.
Before FORET, STOKER and LABORDE, JJ.
FORET, Judge.
This suit is a tort action arising out of an automobile accident occurring in Lafayette Parish on October 20, 1983. A jury rendered judgment in favor of plaintiffs: Mrs. Rachal, in the sum of $17,500 general damages, and in favor of Mrs. Viola Hamilton for the sum of $20,000 general damages, and against defendants, Obiora Agudosi and Safeco Insurance Company of America (Safeco), the uninsured motorist carrier of the Rachals. Defendant Safeco has appealed the award of the trial court on the issue of quantum.
The sole issue before us is whether the jury abused its discretion with respect to the amount of damages awarded.

*1275 FACTS
On October 20, 1983, Obiora Agudosi rear-ended an automobile driven by plaintiff, Shirley Rachal. F. Elizabeth Castain and Viola Hamilton were guest passengers. Plaintiffs allege that the accident was caused solely by the negligence of Agudosi, an uninsured motorist, in rear-ending the Rachal's 1981 Ford Granada. James Rachal, Shirley's husband, sought to recover property damage to the vehicle and medical expenses of his wife. Mrs. Rachal, Mrs. Castain, and Mrs. Hamilton sought to recover damages for personal injuries, including physical and mental pain and suffering; past, present and future disability; and loss of wages. The three ladies alleged injuries to their backs, necks, arms, and bodies. Apparently, little or no damage was done to plaintiff's car, as the estimate for repair of the rear bumper was less than $200. The accident occurred when the Rachal vehicle was stopped at a yield sign waiting to proceed. The Agudosi vehicle struck the Rachal vehicle, pushing it ten or fifteen feet toward Johnston Street.
Immediately following the accident, all three ladies were taken to the emergency room at the Opelousas General Hospital. They were checked, x-rayed, and released. F. Elizabeth Castain is a California resident and she returned to California soon after the accident. She was treated until October 24, 1983, by Dr. Emile Ventre. On October 19, 1984, Safeco settled with Mrs. Castain for the sum of $1,410.

MRS. RACHAL'S MEDICAL
Mrs. Rachal consulted Dr. Emile Ventre on October 21, the day following the accident. Dr. Ventre's testimony reveals that Mrs. Rachal was 49 on the date of the first consultation. She informed him that she had been checked, x-rayed, and released from the emergency room at the Opelousas General Hospital following the accident. Mrs. Rachal complained of neck, shoulder, and low back pain and told Dr. Ventre that she had been thrown into the steering wheel. Dr. Ventre testified that a rear-end type of accident involves a jerk or snapping-type motion of the neck and spine resulting in soft tissue injury from stretching or straining of the tissue. He prescribed muscle relaxants and analgesics to relieve pain and tightness in the muscles. In his opinion, Mrs. Rachal did not have a great deal of objective evidence of spasm.
Dr. Ventre testified that he saw no evidence of severe injury so he elected to treat her conservatively with physical therapy. Because the x-rays taken at Opelousas General Hospital suggested some type of irregularity, he ordered a CAT scan of the cervical spine area which was reported negative.
Dr. Ventre thereafter saw Mrs. Rachal on October 24, October 31, and November 4, 1983. Throughout this period she complained of a stiff neck, but she was steadily improving. Four additional visits were required in November and two in December. Mrs. Rachal's medication was terminated in late November and, after she had been without medication several days and had good motion and no stiffness, she was discharged on December 13, 1983, less than two months after the accident.

MRS. HAMILTON'S MEDICAL
Dr. Ventre first saw Mrs. Viola Hamilton, age 56, on October 21, 1983, the day following the accident. She complained of head, neck, shoulder and right hip pain and headaches. She informed Dr. Ventre that she did not strike any object in the car, but that her body flexed or bent forward. She complained of neck pain, but had a full range of motion. Mrs. Hamilton had a good range of lower back motion, but forward flexion to seventy degrees produced spasm and some pain. Dr. Ventre's diagnosis was low back strain and mild cervical strain. Dr. Ventre testified that Mrs. Hamilton appeared to be steadily improving as her back showed less stiffness and she had a better range of motion. In mid-November, Mrs. Hamilton complained of knee pain associated with bad weather, which Dr. Ventre believed was related to her age, not the accident. Her x-rays were negative for fracture and dislocation, and *1276 indicated osteoporosis of the bone, a condition that pre-existed and was not aggravated by the accident. Dr. Ventre treated Mrs. Hamilton conservatively with muscle relaxants and physical therapy. Mrs. Hamilton was discharged on November 20, 1983, but Dr. Ventre testified that should she complain of symptoms related to the accident two or three weeks after that date, he would not be surprised. He testified that due to her age, recuperation from her injuries might take longer than with a younger person.

TESTIMONY OF RACHAL
Mrs. Rachal's testimony reveals that she immediately felt pain in the neck area following the accident as well as shock and nervousness. Mrs. Rachal testified at the time of trial (in 1985, at the age of 51) that her neck was still causing her pain and that she continued to experience lower back pain. She complained of a limited range of motion in the neck area as a result of this pain. She testified that she received physical therapy at Dr. Ventre's office over a two-month period.
Mrs. Rachal testified that she has experienced neck pain since her discharge, mostly associated with bad weather, but for which she has not sought further medical treatment. She testified that she was unable to work due to her accident-related injuries from October 21 through November 11, a sixteen-day period. She testified that she lost a total of $366.88 in wages. However, the record reflects that two weeks after the accident on October 20, 1983, she was involved in a second accident as the driver of the vehicle on her way to do work at the cafeteria of a different school than the one where she was regularly employed. She admitted that this work was not part of her job, but was something extra she was doing to help her sister.
Mrs. Rachal acknowledged that her medical bills, totalling $1,285.51 had been paid by Safeco and that she had received a check tendered to her by Safeco on October 19, 1984, in the amount of $2,616.88 in addition to the medical bills previously paid.

TESTIMONY OF HAMILTON
Mrs. Viola Hamilton, age 58, testified that prior to the accident, for at least three to four years, she had experienced a nerve problem for which she was still taking medication. She had no complaints of pain in the neck, back, or hip before the accident, but did experience headaches, nausea, neck, shoulder, and hip pain after the accident. Mrs. Hamilton followed a physical therapy treatment for a period of two months. She alleged that following her discharge on December 20, 1983, she continued to have pain associated with weather changes for which she has taken aspirin.
Mrs. Hamilton acknowledged that on October 19, 1984, she was tendered a check by Safeco in the amount of $2,000 in an effort to settle her claim for her injuries, in addition to her medical bills which Safeco previously paid.

QUANTUM
In reviewing damage awards, an appellate court may disturb an award made in the trial court only where the record reflects that the trier of fact abused its discretion in making the award. Emerson v. Empire Fire & Marine Insurance Co., 393 So.2d 691 (La.1981); Darbonne v. Safeco Ins. Co. of America, 452 So.2d 801 (La. App. 3 Cir.1984). "The award can only be raised (lowered) to the lowest (highest) point which is reasonably within the discretion of the trial court." Emerson, supra, at 694.
Before questioning the adequacy or inadequacy of the award, we must look first, not to the prior awards, but to the individual circumstances of the case before us. Reck v. Stevens, 373 So.2d 498 (La.1979).
We must analyze plaintiffs' injuries in order to determine whether or not the amounts awarded are excessive. Mrs. Rachal, the driver, sustained soft tissue injuries to the neck area. She was discharged from treatment as fully recovered on December 13, 1983, about seven weeks following *1277 her accident. Mrs. Hamilton, the passenger, sustained similar injuries and was discharged as fully recovered on December 20, 1983, two months following the accident. Neither plaintiff sought further medical treatment.
The record reflects that the x-rays taken of both plaintiffs at the hospital were negative for fracture or dislocation. Neither plaintiff was permanently disabled, nor did either one sustain lacerations or fractures. Neither plaintiff required hospitalization nor underwent surgery. Both were treated conservatively by a general practitioner with medication and physical therapy at his office. The injuries were non-debilitating: evidenced by Mrs. Rachal's assisting her sister at work in a school cafeteria within one week of the accident during the time period that she claimed she could not perform her work duties as a cafeteria worker. Mrs. Hamilton was unemployed.
The property damage estimate offered by the plaintiffs is less than $200 and suggests a very minor impact between the two vehicles. Dr. Ventre testified that in the case of Mrs. Rachal there was not a great deal of objective evidence of spasm and in the case of Mrs. Hamilton, he referred to her cervical strain as being mild.
After carefully reviewing the record, we conclude that the jury's general damage awards are excessive and not supported by the evidence. Given the evidence, we must lower the awards to these two plaintiffs. In the case of Mrs. Rachal, we believe that $7,000 is the highest point reasonably within the discretion afforded the jury. In the case of Mrs. Hamilton, we believe that $10,000 is the highest amount reasonably within the discretion afforded the jury. The circumstances and facts in other similar cases reveal that these awards are out of proportion with previous awards for similar injuries.[1] The jurisprudence is replete with cases involving plaintiffs more seriously injured than those in the case at bar, receiving damage awards in the same or lower ranges as that awarded plaintiffs by the jury in this case.
It is clear from the record that Mrs. Rachal and Mrs. Hamilton were not seriously injured and that their injuries did not substantially affect their lives. Although Mrs. Rachal sought to recover lost wages, the jury denied her that item of damages presumably because her initial complaints did not warrant her missing work. The amounts awarded to these two plaintiffs were the precise amounts suggested by plaintiffs' counsel in closing argument. We agree with Safeco's suggestion that the amounts awarded to plaintiffs should be subject to a credit for the respective amounts of the tenders previously accepted by Mrs. Rachal and Mrs. Hamilton as partial settlement of their claims. Therefore, the amounts awarded herein are subject to a credit of $2,616.88 for Mrs. Rachal and $2,000 for Mrs. Hamilton, if in fact these checks have been cashed by the plaintiffs.[2]

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed and amended: $7,000 awarded to Mrs. Rachal for pain and suffering, and $10,000 awarded to Mrs. Hamilton for pain and suffering. All costs of this appeal are assessed against plaintiffs, one-half to each.
AFFIRMED, AS AMENDED.
LABORDE, J., concurs.
NOTES
[1] We reviewed awards for damages in cervical strain, hip, leg, and lower back injury cases which are keynoted in West's Louisiana Digest under the Damages heading (respectively) at 130(2) and (3); 131(2) and (4). The decisions cited therein suggest that the damages awarded by the jury to Rachal and Hamilton are excessive under the facts and circumstances of this case.
[2] Both plaintiffs acknowledged receipt of the tendered checks although the record does not reflect that the checks were actually cashed. Safeco avers in its appellate brief that the tenders have been accepted.