582 So.2d 959 (1991)
Ouida HAYNES, Plaintiff-Appellee,
v.
Max K. SHUMAKE, United States Fidelity & Guaranty Company, Leanne H. Shipley and Commodore Insurance Company, in Solido, Defendants-Appellants.
No. 22569-CA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 1991.
*960 Crawford & Anzelmo by Lisa Rogers Trammell, Monroe, for defendant-appellant, Louisiana Indem. Ins. Co.
C. William Gerhardt & Associates by C. William Gerhardt and William F. Kendig, Shreveport, for plaintiff-appellee, Ouida Haynes.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
BROWN, Judge.
Plaintiff, Ouida Haynes, was seriously injured in an automobile accident on April 21, 1988 in Monroe, Louisiana. A vehicle operated by Max Shumake rear-ended a vehicle operated by Leanne Shipley. The Shipley vehicle then struck plaintiff's vehicle causing her to strike a fourth vehicle.
Shumake's insurer paid its policy limits and plaintiff sought recovery from her uninsured/underinsured motorist (UM) carrier, Louisiana Indemnity Insurance Company (Louisiana Indemnity). When approaching trial, defendant, Louisiana Indemnity, paid the full amount of the UM coverage with interest. Therefore, the issue remaining at trial was defendant's liability for penalties and attorney's fees. This appeal is taken by Louisiana Indemnity from the trial court's assessment of statutory penalties and attorney's fees.
*961 Defendant, Louisiana Indemnity, does not question the liability of Max Shumake for plaintiff's injuries nor that the amount of her damages exceeded the combined limits of Shumake's insurance and the UM coverage. Louisiana Indemnity claimed it was justified in delaying payment because a legal dispute existed concerning whether plaintiff had rejected UM coverage. The issue presented for our consideration is whether the trial court committed reversible error in imposing statutory penalties and attorney's fees. Finding no error, we amend the judgment and affirm.
LSA-R.S. 22:658 provided in part:
A. All insurers issuing any type of contract... shall pay the amount of any claim due any insured ... within sixty days after receipt of satisfactory proofs of loss from the insured....
B. (1) Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured ... together with all reasonable attorney fees for the prosecution and collection of such loss....
It is well-settled that LSA-R.S. 22:658 is applicable to an uninsured/underinsured motorist claim. Hart v. Allstate Insurance Company, 437 So.2d 823 (La. 1983). When an insurance carrier is fully apprised of the facts and circumstances establishing plaintiff's right to recovery it shall not arbitrarily or capriciously refuse to pay the claim. Moran v. Wilshire Insurance Company, 520 So.2d 1173 (La. App. 3d Cir.1988) and Savoy v. Chapman, 441 So.2d 21 (La.App. 3d Cir.1983). Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. Because this is primarily a factual issue, the trial court's findings shall not be disturbed on appeal absent manifest error. Caraway v. Royale Airlines, Inc., 579 So.2d 424 (La.1991); Scott v. Insurance Company of North America, 485 So.2d 50 (La.1986); McClain v. General Agents Insurance Company of America, 438 So.2d 599 (La.App. 2d Cir. 1983), writ denied, 442 So.2d 458 (La.1983), and Henson v. Handee Corporation, 421 So.2d 1134 (La.App. 2d Cir.1982).
A plaintiff seeking penalties and attorney's fees under this statute has the burden of proving that the insurer received "satisfactory proofs of loss" as a necessary predicate. Additionally, plaintiff must prove that the insurer's failure to pay was arbitrary, capricious or without probable cause. Hart v. Allstate Insurance Company, supra, Hastings v. Southern National Insurance Company, 554 So.2d 221 (La.App. 2d Cir.1989), writ denied, 559 So.2d 126 (La. 1990); United Land Investors v. Northern Insurance Company, 476 So.2d 432 (La.App. 2d Cir.1985), and Ford v. Golemi, Albrecht Insurance, 522 So.2d 1283 (La.App. 5th Cir.1988), writ denied, 530 So.2d 83 (La. 1988).
To present "satisfactory proofs of loss" for a UM claim, it must be established that the insurer received sufficient facts that (1) that owner or operator of the other vehicle involved was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) the extent of those damages. McDill v. Utica Mutual Insurance Company, 475 So.2d 1085 (La. 1985) and Bird v. Daniels, 508 So.2d 611 (La.App. 2d Cir. 1987), writs denied, 513 So.2d 825 (La.1987) and 513 So.2d 828 (La.1987).
A chronological consideration of the facts of this case is essential to its resolution. The accident occurred April 21, 1988. On December 28, 1988 plaintiff's attorney wrote to defendant requesting a copy of the document signed by plaintiff rejecting UM coverage. Defendant responded on January 4, 1989 by sending a copy of the rejection form. On January 12, 1989 a lawsuit was instituted by plaintiff against the tortfeasor and his insurer.[1] On March 1, 1989 the original suit was amended to *962 include defendant, Louisiana Indemnity. The amended petition specifically alleged that plaintiff did not sign the UM waiver. Also in March defendant's attorney received from Shumake's attorney copies of all pleadings, depositions and other discoverable matters.
On March 23, 1989 plaintiff dismissed Shumake and his insurer after having reached a settlement for policy limits of $25,000.[2] On April 21, 1989 defendant received plaintiff's answers to its discovery interrogatories and motion to produce documents.
On May 22, 1989 defendant was provided a copy of the report of Robert Foley, a document examiner, containing his opinion that plaintiff did not sign the UM rejection document. Foley was hired by plaintiff as an expert. Foley was respected by defendant as a competent expert and in fact had been hired by defendant in the past. Foley further stated that there were some similarities between the purported signatures of plaintiff on the UM rejection form and the signature of Ora Lee Brooks, plaintiff's insurance agent, which appeared on the same form. On June 2, 1989 defendant filed a third party demand against the insurance agent, Ora Lee Brooks.
Defendant's attorney spoke to Ora Lee Brooks for the first time on August 11, 1989 and at that time she denied signing plaintiff's name to the rejection form. On August 17, 1989 plaintiff amended her petition to seek penalties and legal fees against defendant.
On September 13, 1989 defendant attended a pretrial conference which cleared up any misunderstanding concerning Shumake's policy limits. Thereafter, on September 29, 1989 a telephone deposition was taken of the agent, Ora Lee Brooks, by defendant. Approximately one month after this deposition, on October 28, defendant authorized its attorney to hire a document expert. This expert was not hired until November 13, 1989 and his report was delivered on December 12, 1989. Defendant's expert agreed with the findings of Foley that plaintiff did not sign the UM waiver form. He further concluded that there were both similarities and irreconcilable differences between the alleged signature of plaintiff on the UM rejection form and that of Ms. Brooks. The trial date of December 14, 1989 was continued due to the unavailability of a witness. On February 5, 1990 defendant deposited its policy limits together with interest in court.
Ralph Wright, an attorney and defendant's claims manager, testified that there was never a question as to the liability of Shumake or that plaintiff's damages exceeded Shumake's policy limits of $25,000 and the $10,000 limits of her UM coverage. He testified of his knowledge that plaintiff's medical expenses were more than $24,000.
However, defendant claimed that it did not learn of the policy limits of the underlying liability coverage (Shumake) until the pretrial conference held on September 13, 1989. The trial court concluded that upon discovering the limited liability coverage at that conference the defendant then had all the information needed to reevaluate its position and thus the sixty day period commenced. However, we note that with a reasonable investigatory effort the defendant should have known the amounts of the limited liability coverage far in advance of the pretrial conference. LSA-R.S. 22:658 imposes upon the insurer a duty of reasonable investigation and we believe that an early determination of the underlying coverage is a basic fundamental fact of any UM claim. Plaintiff's amended petition by which she joined her UM carrier was founded upon the assertion that the adverse driver was underinsured. Given this assertion, the most logical starting point for the defendant's investigation would have been a determination of Shumake's insurance coverage. Further, this information was easily available to the defendant through the discovery process. Under these circumstances, defendant should have known of the underlying limits long before the pretrial conference so that *963 the sixty day period should have begun running before the date of that conference.
Under the requirements of McDill, supra, plaintiff clearly presented a satisfactory proof of loss. The issue remaining was whether defendant had a valid or reasonable defense based upon the rejection of UM coverage in the insurance application.
In Hastings v. Southern National Insurance Company, supra, this court found that a UM carrier was obligated to act in good faith and deal fairly in paying the claim of its insured. The court further held that this obligation included a reasonable investigation of the claim. In the present case defendant did not undertake any reasonable investigation after it received the amended petition on March 1, 1989 alleging that plaintiff did not sign the UM waiver. Even after defendant received Foley's expert opinion, it did not expeditiously investigate. Only after the case was set for trial did defendant retain its own expert.
Defendant made no effort to take plaintiff's deposition and made only a cursory effort to depose Ms. Brooks. When satisfactory proof of loss was presented to defendant, it had an obligation to either pay within 60 days or to diligently develop facts to support its denial. As stated in Hastings, supra, the UM carrier has an affirmative duty to verify its defense. In this case defendant chose to stand on the form rejecting UM coverage despite contrary allegations by plaintiff and the expert opinion of Robert Foley.
The clear intent of LSA-R.S. 22:658 is to impose upon the insurer not only an obligation to timely pay claims but also a duty to conduct a reasonable investigation throughout the course of its denial of a claim. When the defendant learned of the serious dispute regarding the validity of plaintiff's signature rejecting UM coverage, it was not entitled to simply stand on its previous denial of the claim but was instead obligated to conduct a good faith investigation.
It was not until August 1989 that defendant contacted Ms. Brooks by telephone concerning the signature on the waiver form. Ms. Brooks' deposition was later taken on September 29, 1989 in preparation for trial. Defendant did not retain an expert regarding the signature until November 1989 and once again only in preparation for trial. If the defendant had begun its investigation earlier, it would have more quickly learned of the facts and opinions which ultimately led to its tender of policy limits in February 1990.
We therefore affirm the trial court's holding that the sixty day period ran before the tender of the policy limits thus entitling plaintiff to an award of statutory penalties and attorney's fees.
Plaintiff answered defendant's appeal requesting that the amount of attorney's fees awarded by the trial court be increased. The trial court awarded $3,000 for attorney's fees. The record indicates that plaintiff's attorney spent approximately 50 hours through trial. Although the amount awarded is low, a review of the record indicates that it was not unreasonable. A similar case in amount of work performed was Hastings, supra, where this court set $4,500 for attorney's fees. Considering the broad discretion which is afforded the trial court in such matters, we are constrained to conclude that the award is not inadequate. However, an increase in attorney's fees for services rendered on appeal is appropriate when the defendant appeals and obtains no relief. Plaintiff did properly request an increase due to the appeal. We find that plaintiff is entitled to an award of additional attorney's fees in the amount of $1,500 representing legal services required by this appeal.
Plaintiff further argues that the trial court erred in awarding legal interest on the judgment from the date of tender rather than from the date of judicial demand.
An UM carrier is solidarily liable with the tortfeasor for legal interest from the date of judicial demand. Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La.1982) and Jones v. American Fire-Indemnity Insurance Company, 442 So.2d 772 (La.App. 2d Cir.1983). Therefore, pursuant to LSA-C.C.P. 2164 *964 we amend the judgment to award interest from date of judicial demand.

DECREE
For these reasons, the judgment of the trial court is AMENDED so as to award plaintiff additional attorney's fees in the sum of $1,500 and legal interest on all sums due from date of judicial demand and as amended, AFFIRMED. Costs of this appeal are assessed to defendant.
LINDSAY, J., concurs.
HIGHTOWER, J., concurs as to the result only.
NOTES
[1] The lawsuit also included Shipley and her insurer.
[2] Shipley and her insurer were also dismissed without any liability.