821 So.2d 704 (2002)
Margaret Holloway WALLACE, Plaintiff-Appellee
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
No. 36,099-CA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 2002.
*707 Michael S. Hubley, Marshall, for Appellant.
David C. Turansky, Shreveport, for Appellee.
Before NORRIS, BROWN and DREW, JJ.
NORRIS, Chief Judge.
Defendant, State Farm Mutual Automobile Insurance Co. ("State Farm"), appeals a judgment awarding plaintiff, Margaret Holloway Wallace ("Wallace"), the remaining amount under her State Farm UM policy, plus penalties and attorney fees. Wallace answers, requesting additional attorney fees for this appeal as well as additional penalties under La. R.S. 22:1220. For the reasons expressed, we amend and affirm.

Factual and Procedural Background
On October 6, 1998, Wallace was waiting at a light on Pines Road when the front of her car was struck in a chain collision caused by another driver's brake failure. When Wallace's air bag deployed, it injured her right thumb; the impact also strained her back and neck. The driver at fault, Henry Edwards, had a minimum limit policy of $10,000.00. Wallace had UM coverage with State Farm with $50,000.00 limits.
Wallace was immediately taken to the Willis Knighton Medical Center Emergency Room. Her right thumb was X-rayed, revealing a "non-displaced fracture distal phalanx of the thumb," proximate to the distal interphalangeal ("DIP") joint, where the thumb meets the knuckle. Her thumb was placed in a splint. The next day, Wallace saw her family physician, who referred her to an orthopedic surgeon, Dr. John Ferrell, for the care of her thumb. Dr. Ferrell diagnosed a strain of the neck and back and placed her thumb in a spica cast to immobilize it. On November 17, 1998 Dr. Ferrell placed her thumb in a short arm-thumb spica; on December 1, he shortened it again.
Her hand in the thumb spica and sling prescribed by Dr. Ferrell, Wallace returned to work four days after the accident at the General Motors Assembly *708 Plant. She was transferred to a job which she could perform without the active use of her right hand, and remained there for six weeks. On December 14, 1998, she told Dr. Ferrell that she wanted to return to her former job at GM; he showed her how to tape her hand in order to protect the thumb to help her with her job. Thus, within two months of the accident, she returned to her prior full-time position using a pneumatic gun to install seatbelt harness systems. She performed this job until November 1999 when she voluntarily transferred from Shreveport to Detroit, Michigan to join her husband, a retired GM employee.
Because of her move, Wallace could not complete physical therapy ordered by Dr. Ferrell in October 1999. X-rays taken in October and November 1999 revealed rapid arthritic development in her right thumb. Dr. Ferrell opined in his October 8, 1999 medical report and repeatedly testified at trial that Wallace's rapid acceleration of arthritis in the DIP joint was due to the trauma she suffered in the automobile accident on October 6, 1998. Her last visit with Dr. Ferrell was on November 1, 1999; at that time he reported that her arthritis would not improve and recommended that she see an orthopedic hand surgeon upon her move to Detroit. He also stated that the only remedy available for a severely arthritic thumb joint such as hers was a surgery called arthrodesis or fusion of the thumb in order to immobilize the joint; he envisioned that she would eventually have to undergo this surgery.
Upon Wallace's transfer to Detroit in November 1999, her responsibilities included installing the key and lock mechanisms on automobiles, which caused her pain. She sought treatment with Dr. Ronald Rook, who assessed that she would require hand surgery and accordingly referred her to his partner, Dr. Steven Acker, who agreed with this treatment prognosis. Dr. Acker submitted that, in light of the chronology of her symptoms, the trauma she suffered in the 1998 accident could be the cause of her severe arthritis, which in turn was the cause of the requisite thumb surgery which shortly ensued. Aside from the surgery to the DIP joint, Dr. Acker stated that she had no other available treatment options.
On January 31, 2000, Dr. Acker performed the arthrodesis earlier contemplated by Dr. Ferrell. Two screws were inserted into her DIP joint, thus permanently immobilizing it. Dr. Acker's postoperative diagnosis was that Wallace indeed had severe degenerative arthritis. Following surgery, Wallace developed Reflex Sympathetic Dystrophy ("RSD"). Dr. Acker described RSD as being related to the sympathetic nervous system, which is the part of the hand responsible for sweating; he stated "basically, the nervous system in her hand wouldn't shut down and it maintains a hyperactive state." Dr. Acker added that as a result of the RSD, she has also developed Chronic Pain Syndrome, where she continues to experience severe pain in her right hand "much more severe than even [the] preoperative complaints that she began with." Dr. Acker stated that she would never have developed RSD or Chronic Pain Syndrome but for the arthrodesis surgery. He concluded that her postoperative pain is related to a myriad of problems, including the initial trauma of the automobile accident. As of the last time he saw her on January 26, 2001, Dr. Acker stated that she only "might" be able to return to work in the future, but he did not recommend it. She has not returned to work since her surgery.
Dr. Ferrell stated that according to the most recent AMA guidelines for physical impairment, Wallace would receive a 40% *709 impairment rating of the hand, because of the fusion of her joint in her right thumb; she would receive a 15% "upper extremity" impairment rating; finally, she would receive between 8-10% "whole person" impairment rating.
Wallace filed the instant suit against State Farm, her UM insurer, on July 24, 2000. She prayed for damages limited to $50,000.00, together with penalties and attorney fees under La. R.S. 22:658, legal interest, and all costs including expert witness fees.
By September or October of 1999, Wallace supplied State Farm with documentation showing that she had settled with the driver at fault and his insurance company by accepting $10,000.00 in policy limits. By September of 2000, she had also provided State Farm with documentation detailing her medical, employment, and wage records.
Before trial began on August 15, 2001, the parties stipulated that Edwards had an insurance policy with Lyndon Property Ins. Co. ("Lyndon"), which carried bodily injury liability limits of $10,000.00 per person; that Lyndon had paid Wallace the policy limits and she released him on September 10, 1999; that Wallace had UM coverage of $50,000.00 per person through State Farm; State Farm issued unconditional tenders of $1,250.00 on November 17, 1999 and $10,000.00 on May 3, 2000 in UM benefits; and that State Farm had tendered its medical payments coverage policy limits of $5,000.00.
After a bench trial, the court ruled in favor of Wallace, finding that the thumb injury sustained in the October 1998 collision resulted in severe degenerative arthritis of her thumb, which necessitated the fusion surgery, which in turn caused her to develop RSD and, ultimately, Chronic Pain Syndrome. On October 15, 2001, after a hearing on the rule to tax costs, the trial court awarded the remainder of the UM benefits, $38,750.00 in damages; $3,875.00 in statutory penalties, $19,500.00 in attorney fees, $3,700.00 in expert witness fees, $1,084.00 in transcript costs, plus all other court costs. State Farm appealed, contesting quantum and the award of penalties and attorney fees. Wallace answered, asking for additional penalties and attorney fees.

Applicable Law
The trier of fact is accorded much discretion in fixing general damage awards. La. C.C. art. 2324.1. The discretion vested in the trier of fact is great, "even vast," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, (La.1993), cert denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973 (La.1991); Mart v. Hill, 505 So.2d 1120 (La.1987). A claimant is entitled to the presumption that her injuries resulted from an accident if the claimant was in good health prior to the accident, and following the accident the symptoms of the claimant's disabling condition appeared and continuously manifested themselves afterwards, providing that the medical evidence shows a causal connection between the accident and the disabling condition. Housley v. Cerise, supra at 980, and citations therein.
Attorney fees are not allowed in Louisiana except where authorized by statute or contract. Rivet v. State, 96-0145 (La.9/5/96), 680 So.2d 1154; Quealy v. Paine, Webber, Jackson, & Curtis, Inc., 475 So.2d 756 (La.1985). In this suit for payment under a UM coverage policy, awards for attorney fees and penalties are *710 statutorily authorized by La. R.S. 22:658 which states, in pertinent part:
A. (1) All insurers issuing any type of contract * * * shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * *
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand thereof, as provided in R.S. 22:658(A)(1), or within thirty days after written agreement or settlement as provided in R.S. 22:658(A)(2) when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, together with reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount. (Emphasis added).
* * *
Another statute provides that the insurer may be liable for additional damages for breach of duty to adjust claims fairly, and for penalties up to $5,000.00, where an insurer is found to have acted arbitrarily, capriciously, or without probable cause. See, La. R.S. 22:1220; Calogero v. Safeway Ins. Co. of La., 99-1625 (La.1/19/00), 753 So.2d 170, and citations found therein.
These statutes are penal in nature, and therefore must be strictly construed. Hart v. Allstate, 437 So.2d 823 (La.1983). Penalties and attorney fees are not assessed unless it is clearly shown that the insurer was in fact arbitrary, capricious, and without probable cause in refusing to pay. Block v. St. Paul Fire & Marine Ins. Co., (La.App. 2 Cir. 9/22/99), 742 So.2d 746, and citations found therein.
A UM carrier is obligated to act in good faith and deal fairly in paying the claim of its insured. Haynes v. Shumake, 582 So.2d 959 (La.App. 2 Cir.1991), citing Hastings v. Southern National Ins. Co., 554 So.2d 221 (La.App. 2 Cir.1989), writ denied, 559 So.2d 126 (La.1990). This obligation includes the duty to reasonably investigate the claim. Id.
An insurer's actions are "arbitrary and capricious" when its willful refusal of a claim is not based on a good faith defense, La. Maintenance Servs., Inc., v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250, 1253 (La.1993), or is unreasonable or without probable cause, Darby v. Safeco Ins. Co., 545 So.2d 1022, 1029 (La.1989). When an insurance carrier is fully apprised of the facts and circumstances establishing plaintiffs right to recovery it shall not arbitrarily or capriciously refuse to pay the claim. Haynes v. Shumake, supra. Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. Id. The determination that an insurer's handling of a claim is arbitrary and capricious is a factual finding which may not be disturbed unless manifestly erroneous. Calogero v. Safeway Ins. Co. of La., supra.
A plaintiff seeking penalties and attorney fees has the burden of proving that the insurer received "satisfactory proofs of loss" as a necessary predicate. Haynes v. Shumake, supra. To present *711 "satisfactory proofs of loss" for a UM claim, the plaintiff must establish that the insurer received sufficient facts that (1) the owner or operator of the other vehicle involved was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) the extent of those damages. McDill v. Utica Mutual Ins. Co., 475 So.2d 1085 (La.1985).
Trial by jury is not available in a suit where the amount of no petitioner's cause of action exceeds $50,000.00, exclusive of interest and costs. La. C.C.P. art. 1732(1). The term "cause of action" in art. 1732 is not synonymous with the term "amount in controversy" and does not refer to the amount of the plaintiff's overall claim arising out of the transaction or occurrence. See, Benoit v. Allstate Ins. Co., XXXX-XXXX (La.11/28/00), 773 So.2d 702. Generally, the amount in dispute does not include interest, court costs, attorney fees, or penalties, whether provided by agreement or by law. La. C.C.P. art. 4. By analogy, the jurisdictional threshold of parish and city courts is based on the "amount in dispute," i.e., the amount in controversy, and specifically excludes interest, court costs, attorney fees, or penalties, whether provided by agreement or by law. See, La. C.C.P. art. 4841.

DiscussionGeneral damages
By its first assignment of error, State Farm contends that the trial court abused its discretion in awarding an excessive quantum for Wallace's injuries. State Farm argues that Wallace's injuries were not severe enough to support the amount awarded for what it considers a mere "sprain" of her thumb. It argues that there is insufficient proof that the degenerative arthritic condition in Wallace's DIP joint, the surgical procedure, RSD, and Chronic Pain Syndrome, were in fact causally related to the October 1998 accident. Specifically, State Farm notes a radiology report suggesting arthritis in her right thumb on the day of the accident and the possibility that she had previously incurred an avulsion fracture of her DIP joint. State Farm goes on to assert that her operating surgeon in Michigan, Dr. Acker, did not ascribe her arthritis to the instant accident.
State Farm further suggests that Wallace is using her thumb injury as an excuse not to work because she was apparently having problems and disagreements with her supervisors at the Detroit plant. State Farm casts doubt on Wallace's alleged inability to return to work after her surgery in the Detroit plant, since she did heavier work at the Shreveport plant just months post accident. State Farm adds that it was precluded from securing any independent examination of her prior to her having the surgery. It suggests the maximum affirmable award would be $26,250.00.
As noted in Wallace's brief, all evidence adduced at trial indicated that, prior to this collision, she was in good health, able to function normally, and had never complained of experiencing any thumb problems. Only after the accident did her medical problems begin to manifest. These facts raise the presumption that the accident caused her injuries. Housley v. Cerise, supra.
State Farm's claim of a prior injury is based on a radiology report, made on the date of the accident, noting a possible "old avulsion fracture." However, upon examining these X-rays as well as others taken several days later, Dr. Ferrell testified that her joint spaces in her right thumb were well preserved, she did not have "enough [arthritis] to mention" in her thumb, and while he noticed some changes in the DIP joint, he stated that it might have been some calcification rather than a *712 prior injury which was "normal" and that "everyone has them." Assuming, arguendo, that there was a preexisting dormant thumb injury, it is undisputed that a traumatic injury, such as a car accident, would certainly exacerbate it. Dr. Acker admitted that the condition of her DIP joint on January 28, 2000 could be consistent with a trauma injury a couple of years prior. Even Dr. Rook conceded that severe degenerative arthritis developing in the DIP joint over the course of one year would be indicative of a "crushing type injury" that an automobile accident would cause. Further, State Farm produced no medical evidence that the thumb injury caused by this accident had ever completely healed prior to her move to Michigan. Both of her treating orthopaedic surgeons, Dr. Ferrell and Dr. Acker, viewed her ultimate surgery as the necessary and only alternative for the treatment of her severe degenerative arthritic condition.
The trial court's determination that the 1998 accident was the cause in fact of her thumb injury, ultimately resulting in surgery, a permanent disability rating, and residual pain, is not plainly wrong. Housley v. Cerise, supra. With the finding of causation, the quantum awarded is plainly within the trial court's great discretion. Hughes v. Bossier Parish School Board, 32,225 (La.App. 2 Cir. 10/29/99), 745 So.2d 816; Steed v. Stokes Towing Co., Inc., 96-1008 (La.App. 5 Cir. 6/30/97), 709 So.2d 790, writ denied, 97-2036 (La.11/14/97), 703 So.2d 626; Kugler v. Tangipahoa Parish School Board, 99-0016 (La.App. 1 Cir. 2/18/00), 752 So.2d 375. This assignment of error is without merit.

Penalties and attorney fees
By its next three assignments, State Farm contests the award of penalties and attorney fees. First, it urges Wallace did not provide reasonable notice of a UM claim, as required by McDill v. Utica Ins. Co., supra. It urges she never provided adequate proof that the driver at fault, Edwards, was underinsured, as required by La. R.S. 22:1406 D(6). Then it concludes that without a specific date of notice, the 30 day limits established by La. R.S. 22:658 and 22:1220 never began to run, thus defeating a necessary requirement for penalties and attorney fees.
By its sixth assignment, State Farm argues that even if attorney fees and penalties were warranted, the awards of $19,500.00 for attorney fees and $3,875.00 for penalties were excessive.
The trial court found that by September or October 2000, State Farm received Wallace's discovery response, the requisite "satisfactory proof of loss" was completed.[1] By this time, State Farm had received all necessary documents to effectuate a reasonable investigation. However, State Farm never conducted any semblance of a reasonable investigation despite receiving all the information necessary to establish a connection between the *713 accident and Wallace's condition. It never requested an independent medical examination of Wallace or made any effort to take the deposition of Dr. Ferrell, Wallace's first orthopedic surgeon who attributed all of her resulting injuries to the car accident. State Farm did not even supply its own attorney in Michigan with X-rays to show the Michigan physicians when they had their depositions taken. State Farm also never took statements or depositions of any of the accident witnesses, which Wallace had provided in discovery. State Farm produced no evidence to show that Wallace was at fault in the accident and did not stipulate to Edwards's fault.
This court also recognizes that State Farm refused to allow the depositions of Karen Sheffer, Wendy Holloway Booker, Dr. Roger Harris, Dr. Ronald Rook, and Dr. Steven Acker to be taken by telephone, causing a significant amount of unnecessary expense. Instead, it absolutely insisted on taking depositions in person. State Farm's Shreveport attorney was not compelled to travel to Detroit, as State Farm employed counsel already there; however, Wallace's counsel was obliged to make the trip. Interestingly, State Farm made no attempt whatsoever to take the deposition, via telephone or otherwise, of Dr. Ferrell, Wallace's treating orthopedic surgeon in Shreveport who without reservation linked the 1998 accident to all of Wallace's resulting problems. Moreover, despite disputing the medical findings that Wallace's arthritic condition was caused by the car accident, State Farm never moved for an independent medical exam.
Perhaps most luminary to this court is the fact that State Farm had already made unconditional payments on this UM policy before Wallace even filed the instant suit. This, in our view, completely undermines the claim that it never received the proper McDill "satisfactory proof of loss." The two unconditional tenders plus the medical benefit payment totaling $16,250.00 would not have been made otherwise.
The clear intent of La. R.S. 22:658 is to impose upon the insurer not only a duty to pay claims timely but also a duty to conduct a reasonable investigation throughout the course of its denial of a claim. See, Haynes v. Shumake, supra. The trial court was not clearly wrong in concluding that State Farm failed to undertake such a reasonable investigation of Wallace's claim and that State Farm's failure to pay was arbitrary, capricious, and without probable cause. For this reason, we find no manifest error in the trial court's award of penalties and attorney fees under La. R.S. 22:658.

Additional penalties and attorney fees
By her answer to appeal, Wallace seeks an increase in the penalty and attorney fees award. With regard to the penalty, she asserts that State Farm failed to make a reasonable unconditional tender within the 60 day period outlined in La. R.S. 22:1220; therefore, she should be entitled to an additional statutory penalty of $5,000.00. We note Wallace's petition sought a penalty under La. R.S. 22:658; the application of La. R.S. 22:1220 was not addressed until the hearing on the rule to tax costs; the court discussed both statutes, concluding that La. R.S. 22:658 was more appropriate for the case. Given the trial court's great discretion in imposing statutory penalties and the narrow construction of both penal provisions, we find no abuse of discretion in the instant award of $3,875.00.
Wallace is, however, entitled to an increase in the attorney fees award for the work performed on appeal. An increase in attorney fees for services rendered on appeal is appropriate when the defendant appeals and obtains no relief. Haynes v. Shumake, supra. Wallace did properly request an increase due to the *714 appeal in a timely answer to appeal. Her attorney filed an extensive brief in defense of the trial court's judgment and presented oral argument before this court. We find that Wallace is entitled to an award of additional attorney fees in the amount of $1,000.00 representing legal services required by this appeal.

Limitation of damages
By its fifth assignment, State Farm contends that the trial court abused its discretion in its award exceeding Wallace's "self-imposed jury trial limitation" of $50,000.00 included in her original petition; it disagrees with the court's determination that this limitation was abrogated by Wallace's additional request for penalties and attorney fees. State Farm urges this court to read together La. C.C.P. arts. 1732 and 4841. Article 1732 limits jury trials to those suits where the cause of action exceeds $50,000.00. State Farm urges that under La. R.S. 22:658, Wallace's claim for penalties and attorney fees should be included in the $50,000.00 limitation she placed on her claim.
Wallace responds that State Farm failed to move for a jury trial or request a stipulation that the penalties and attorney fees were to be included within the $50,000.00 cap, never raising the issue until after the judgment had been rendered, thus waiving its right to a jury trial. She urges that penalties and attorney fees should not be aggregated with general and special damages.
Wallace clearly prayed for general and special damages of not more than $50,000.00, plus statutory penalties and attorney fees. Reading La. C.C.P. arts. 1732 and 4 together, we find the La. R.S. 22:658 claim is not included within the general demand. State Farm was indeed put on notice of her request for attorney fees and penalties in addition to her claim for $50,000.00 in damages,[2] as she prayed for such relief and these issues were fully litigated at trial. We pretermit any further discussion concerning La. C.C.P. art. 1732's jury trial limitation since State Farm never requested a trial by jury or raised the issue before the trial court. This assignment of error lacks merit.

Conclusion
For the foregoing reasons, the judgment of the trial court is AFFIRMED, with the exception of the attorney fees award which is AMENDED to award Wallace an additional sum of $1,000.00 in attorney fees for work performed on this appeal. Costs of this appeal are assessed against State Farm.
AFFIRMED AS AMENDED.
NOTES
[1] Wallace supplied State Farm with the following documents by September of 2000: the declaration sheet from Lyndon; the claims check for $10,000.00 from Lyndon; the release of Lyndon and Edwards by Wallace; Wallace's answers to interrogatories, which included a list of before and after accident witnesses, as well as Wallace's various treating physicians prior to the accident; Wallace's signed medical authorization to obtain all of her medical records; Wallace's signed authorization to release employment and wage records; GM employment records such as income tax information, W 2 forms, and tax returns; Wallace's emergency hospital report and bill on the date of the accident; medical reports from her three treating physicians in Michigan (Drs. Harris, Rook, and Acker); records and bills from the hospital in Michigan where her surgery took place; medical reports and bills from Dr. Ferrell; and records and bills for her rehabilitation treatments.
[2] In its appellate brief, State Farm seems to be contending that it would have requested a jury trial had it known that penalties and attorney fees were exclusive of Wallace's $50,000.00 UM policy demand. We find such argument to be disingenuous, as State Farm could have raised such a request for a jury trial by appropriate motion at an earlier stage in these proceedings and the issue could have been settled in the trial court.