STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

SHERMANE HECTOR

VERSUS

MO-DAD ENVIRONMENTAL SERV., LLC, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 109111
HONORABLE JAMES RAY MCCLELLAND, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL
JUDGE**

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Charles A. Schutte, Jr.**
**Guglielmo, Marks, Schutte, Terhoeve & Love**
**320 Somerulos Street**
**Baton Rouge, LA 70802**
**(225) 387-8330**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **William A. Stegall, Jr.**
    **William A. Stegall, Sr.**

**Scott Webre**
**Webre and Associates**
**2901 Johnston Street, Suite 307**
**Lafayette, LA 70503**
**(337) 237-5051**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Shermane Hector**

**EZELL, Judge.**

William A. Stegall, Sr. and William A. Stegall, Jr. appeal a judgment piercing the company veil of Mo-Dad Global Environmental Systems, LLC (Global) and finding them personally liable to Shermane Hector. Shermane was injured while working for Global and entered into a settlement for her injuries which was reduced to judgment. Global did not purchase workers' compensation insurance, and it never paid the judgment. For the following reasons, we affirm the judgment of the trial court.

## FACTS

On August 5, 2005, Shermane was employed by Global as a secretary when she fell through a rotten area of flooring in the trailer where she worked. The trailer was owned by William A. Stegall, Sr. and used by Global at its business office located at the Port of New Iberia. Shermane filed a workers' compensation claim against Global. On the morning of trial, Global agreed to a settlement in the amount of $35,000.00. Pursuant to the agreement, judgment was entered against Global on October 20, 2006, by the Office of Workers' Compensation. Payment was not timely made, and another judgment was entered against Global for penalties and attorney fees. Once again, payment was never made.

Shermane also filed a workers' compensation claim against her joint employer, General Staffing Resources, seeking the same relief. Again, when payment was not made, penalties and attorney fees were assessed.

Shermane filed suit on February 7, 2007, against Global to make the judgment rendered against it executory. Shermane amended her suit to include claims: (1) asserting a claim for damages pursuant to La.R.S. 23:1032.1 for failure to secure workers' compensation insurance; (2) piercing the company veil of

Global to both Mr. William Stegall, Sr. (hereinafter Bill as he refers to himself in brief) and Mr. William Stegall, Jr. (hereinafter William as he refers to himself in brief); and (3) adding a tort claim pursuant to La.Civ.Code art. 2322 against Bill, as owner of the trailer.

Trial was held on May 7, June 25, and July 2, 2012. Regarding Shermane's claim for damages for failure to secure workers' compensation insurance, the trial court determined that La.R.S. 23:1032.1 did not apply to the present action because it took effect on August 15, 2005, and applied prospectively only. The trial court also determined that the claim in tort against Bill had prescribed.

The trial court then rendered judgment piercing the company veil to both William and Bill. It held them liable in solido with Global for the $35,000.00 judgment in addition to the $8,400.00 in penalties and $1,000.00 in attorney fees. The trial court also awarded an additional $10,000.00 in attorney fees. The Stegalls then filed the present appeal.

## MEMBERSHIP OF WILLIAM STEGALL, JR. IN LLC

The defendants first argue that the trial court erred in finding that William was a member of Global. They argue that Global is a limited liability company established under LLC law and owned by Bill and his wife, each with a 50% share. They argue that William never made a capital contribution, never received a K-1 for income tax purposes, and never received any distributions of profits or losses from Global. It is the defendants' position that William was only the manager of Global.

The determination of whether someone is a member of a limited liability company is a finding of fact subject to the manifest error standard of review. *Destiny Servs., L.L.C. v. Cost Containment Servs., L.L.C.*, 10-1895 (La.App. 1 Cir.

2

9/20/11), 2011 WL 4375318. Under the manifest error/clearly wrong standard of review, findings by the trial court based on the credibility of witnesses are entitled to great deference, because only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

A "member" is "a person with a membership interest in a limited liability company with the rights and obligations specified under this Chapter." La.R.S. 12:1301(A)(13). "Membership interest" is further defined as "a member's rights in a limited liability company, collectively, including the member's share of the profits and losses of the limited liability company, the right to receive distributions of the limited liability company's assets, and any right to vote or participate in management." La.R.S. 12:1301(A)(14).

Louisiana Revised Statutes 12:1305 provides for the filing of the initial report of the limited liability company, known as the Articles of Organization. Pursuant to this law, Global filed its Articles of Organization, signed on November 28, 2001, with the Louisiana Secretary of State. These articles specifically provided that Global would be member-managed by William A. Stegall, Jr. William was additionally listed as the first and only member. Furthermore, all subsequent annual reports filed with the secretary of state indicated that William A. Stegall, Jr. was a member. No additional members were shown on the reports.

Louisiana Revised Statutes 12:1319(D) specifically provides in pertinent part:

> Except as otherwise provided in the articles of organization or an operating agreement, a limited liability company and its members, managers, and agents may recognize and treat a person registered on its records as a member, as such for all purposes, and as the person

3

exclusively entitled to have and to exercise all rights and privileges incident to the ownership of such membership interests.

Clearly, the members, managers, and agents can rely on the articles of organization to determine who are members of a limited liability company.

William testified that initially Global was going to be a company that he owned and ran. However, he testified that changed after his father loaned Global a lot of money. Bill took back the company as a payback for the loan of the money. William testified that membership was changed to his father and mother at some point, but he testified that he could not remember if it was formally changed.

A review of the evidence indicates that membership was never formally changed. The law provides that a certificate of correction can be filed with the secretary of state correcting any errors in the paperwork. La.R.S. 12:1310. This was not done.

It is clear that the records of limited liability companies are important in identifying the members of the company. Global's records over the years have continuously indicated that William was the only member of Global. Clearly, third parties are entitled to rely on the company records as evidence of membership status.

The evidence and testimony further indicated that the losses Bill and his wife listed on their own income taxes was more for practical purposes than for their own needs. William testified that the CPA indicated that his father could use the losses generated by Global. William stated he did not need the losses.

We also find that William did make a capital contribution to Global. Pursuant to La.R.S. 12:1301(A)(3), a "capital contribution" is "anything of value that a person contributes to the limited liability company as a prerequisite for, or in

4

connection with, membership, including . . . services rendered . . . ." By his own testimony, William could not remember if he had been paid a salary as manager of Global but did not think he had been paid a salary. Evidence and testimony indicated that Global paid William a commission on two occasions; this is the only money he received from Global. We find that William's actions in managing Global without a salary were "services rendered" as a capital contribution to Global.

In making its decision that William was a member of Global, the trial court specifically found that William was not a credible witness, observing that he was very nervous in his demeanor and very evasive in his answers. We find no manifest error in the trial court's conclusion that William Stegall, Jr. was a member of Global.

## PIERCING THE CORPORATE VEIL

The defendants argue that the trial court erred in piercing the corporate veil of Global and holding William and Bill liable for Global's debt to Shermane. They argue that it is only under extreme circumstances that the court should pierce the company veil of Global to make a member liable for the debts of the limited liability company.

The supreme court recently explored the concept of piercing the company veil of a limited liability company and observed that a limited liability company and its members are wholly separate persons. *Ogea v. Merritt*, 13-1085 (La. 12/10/13), ___ So.3d ___. The supreme court, citing *Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C.*, 11-2254 (La.App. 1 Cir. 7/10/12), 97 So.3d 595, recognized that piercing the company veil results in personal liability of the owner of the LLC, explaining that:

in narrowly defined circumstances, when individual member(s) of a juridical entity such as an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person, the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable. When individual member(s) are held liable under such circumstances, it is said that the court is "piercing the corporate veil."

*Id*. at ___.

However, the supreme court did not further address the piercing the corporate veil doctrine, because it was neither relied upon by the lower courts nor invoked by the plaintiff.

In *Charming Charlie, Inc.*, 97 So.3d at 598-99, the first circuit explained the application of the piercing the corporate veil doctrine as follows:

> Louisiana courts have allowed a piercing of the corporate veil under only two exceptional circumstances, namely, where the corporation is an alter ego of the shareholders and the shareholders have used the corporation to defraud a third party (the "alter ego" doctrine) and where the shareholders have failed to conduct a business on a "corporate footing" to such an extent that the corporation ceases to be distinguishable from its shareholders. *Riggins*, 590 So.2d at 1168; *Imperial Trading Co.*, 837 So.2d at 669–70. Some of the relevant factors considered in determining whether to apply the alter ego doctrine include: commingling of corporate and shareholder funds; failing to follow statutory formalities for incorporating and transacting corporate affairs; undercapitalization; failing to maintain separate bank accounts and bookkeeping records; and failing to hold regular shareholder and director meetings. *Riggins*, 590 So.2d at 1168; *Imperial Trading Co.*, 837 So.2d at 670.

> Furthermore, Louisiana courts are reluctant to hold a shareholder, officer, or director of a corporation personally liable for corporate obligations, in the absence of fraud, malfeasance, or criminal wrongdoing. *Riggins*, 590 So.2d at 1168; *Imperial Trading Co.*, 837 So.2d at 670. In pleading fraud, the circumstances constituting fraud must be alleged with particularity, although knowledge may be alleged generally. La. C.C.P art. 856. There are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's

consent to (a cause of) the contract. *See* La. C.C. art. 1953; *Shelton v. Standard/700 Associates*, 01–0587 (La.10/16/01), 798 So.2d 60, 64. Thus, fraudulent intent, or the intent to deceive, is a necessary and inherent element of fraud. Fraud cannot be predicated upon mistake or negligence, no matter how gross. *Terrebonne Concrete LLC v. CEC Enterprises, LLC*, 11–0072 (La.App. 1st Cir.8/17/11), 76 So.3d 502, 509, *writ denied*, 11–2021 (La.11/18/11), 75 So.3d 464.

Louisiana Revised Statutes 12:1320(D) provides for piercing the company veil and imposes liability on a member as justification to prevent the use of a limited liability company in defrauding creditors. *ORX Resources, Inc. v. MBW Exploration, L.L.C.*, 09-662 (La.App. 4 Cir. 1/10/10), 32 So.3d 931, *writ denied*, 10-530 (La. 5/7/10), 34 So.3d 862.

Whether a limited liability company is an alter ego of its members is a finding of fact subject to the manifest-error standard of review. *Dishon v. Ponthie*, 05-659 (La.App. 3 Cir. 12/30/05), 918 So.2d 1132, *writ denied*, 06-599 (La. 5/5/06), 927 So.2d 317.

As background to the discussion of piercing the company veil, it is relevant to note that Global was not the only company set up by the Stegalls. William explained that the family started several companies, including Mo-Dad Companies, LLC; Mo-Dad Utilities, LLC; and Pavement Maintenance Unlimited, LLC, all of which were operating at the time of the trial. A previous company included Mo-Dad One, Inc. Another company was General Staffing, which was the predecessor entity to Abraham Payroll. General Staffing was a company organized for the issuance of payroll checks. The workers' compensation insurance provider was not happy with the name of the company, so General Staffing was shut down and Abraham Payroll was started.

7

Bill testified that he put his money into these companies so he would not have the liability. He further stated that he owned the assets of the companies, and "[t]he bad times stayed with the company, and the good times came to [him]."

The administrative duties for all the companies were performed at the office in Denham Springs. William and his wife, Susan, would perform the bookkeeping services for all of these companies, with Susan performing the majority of the work. Susan testified that she received her salary from Mo-Dad Utilities. She received no compensation from any of the other companies. Susan explained that the companies would loan money to each other. Either her husband or her father-in-law made the decision on what intercompany loans and personal loans were made.

William stated that if bills came due that needed to be paid, he would contact his father and then they would decide whether they were going to be able to fund the operations. William testified that any intra-company loans were "common manager" operated. In other words, if a company could pay back a loan, then it would pay it back. If the company could not pay back the loan, then at some point, it went out of business. These loans were also non-interest bearing.

Susan also testified that there was one American Express card that was used by all the companies. Frequently, one company would pay the American Express bill and then the expense was coded to the proper company. Susan further stated that when one company would pay the American Express bill of another company, it would be cash derived out of a loan from one company to another.

In setting up Global, Bill personally paid $106,000.00 for the purchase of the business. Additional installment payments of $5,000.00 were made on a monthly basis by Global, with Bill lending the money to Global to make the payments. At

that time, Bill testified that he received title to the property. By the end of 2004, Bill had loaned $218,400.00 to Global, which Global never paid back.

Global operated it's business on property leased from the Port of Iberia. Bill and his wife entered into a lease with Global in which Global leased the buildings, owned by Bill and his wife, used for operating the business. Global did not own any vehicles either. The vehicles it used in its business were owned by Bill or another entity.

Even the handling of Shermane's accident involved multiple entities. Most importantly, William testified that he had workers' compensation insurance for another company, which he thought included all of the companies. After Shermane's accident, he found out that the workers' compensation insurance for the other company did not include Global.[1]

There was also testimony regarding a payment made to Shermane's attorney for her medical bills. In 2006, a check in the amount of $9,599.73 was made payable to Shermane's attorney for the payment of medical bills. The check was written from Pavement Maintenance's account as opposed to Global's account. Not until 2009 was this error noticed. A correcting entry was made on the books, but money was never transferred from Global to Pavement Maintenance's account.

Testimony also revealed that there was allegedly an account receivable that had been earmarked to pay the workers' compensation judgment. However, Global never received the money from that account, and the judgment was not paid. Interestingly, Bill would advance money to Global to pay other debts but chose not

---

[1] We note that the trial court found that La.R.S. 23:1032.1, providing for a tort claim and penalties for failure to secure workers' compensation insurance, took effect August 15, 2005. The trial court found that it was a substantive law to be applied prospectively only. Shermane could not assert a claim in tort against the defendants since her injury occurred before the effective date. This ruling was not appealed.

to advance money to Global to pay this debt. Shortly after the settlement had been reduced to judgment, Bill and William testified that they decided to shut down Global because Hurricanes Katrina and Rita had destroyed the business.

We find no manifest error in the trial court's decision to pierce the company veil of Global and hold Bill and William personally liable to Shermane for the amount of money Global owes Shermane under the workers' compensation judgments. Clearly, these businesses were not operated as separate entities from either each other or their members. There was extensive commingling of funds between the entities and members. Furthermore, Bill was completely funding the operations of Global personally. He admitted that he never received any distributions or profits from Global. It appears that these companies were set up to avoid liability, but no efforts were made to treat these companies as separate entities. The avoidance of their responsibility to Shermane is not what the law intended, especially in a case like this where the manner in which business was conducted between the different entities and the members fostered a situation in which workers' compensation insurance was not purchased for Global.

## ADDITIONAL ATTORNEY FEES

The defendants next claim that the trial court erred in awarding additional attorney fees in the amount of $10,000.00. They argue that the trial court did not have subject matter jurisdiction or legal authority to make an award of additional attorney fees against them. The defendants claim that the Office of Workers' Compensation had the exclusive subject matter jurisdiction to award attorney fees and costs under La.R.S. 23:1201(G) for failure to pay the judgment.

District courts are vested with original jurisdiction over all civil and criminal matters unless the Constitution provides otherwise or except as provided by law for

administrative agency determinations in workers' compensation matters. La.Const. Art. V, § 16. Louisiana Revised Statutes 23:1310.3(F) provides for the original and exclusive jurisdiction of the Office of Workers' Compensation as follows:

> Except as otherwise provided by R.S. 23:1101(B), 1361, and 1378(E), the workers' compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter, including but not limited to workers' compensation insurance coverage disputes, group self-insurance indemnity contract disputes, employer demands for recovery for overpayment of benefits, the determination and recognition of employer credits as provided for in this Chapter, and cross-claims between employers or workers' compensation insurers or self-insurance group funds for indemnification or contribution, concursus proceedings pursuant to Louisiana Code of Civil Procedure Articles 4651 et seq. concerning entitlement to workers' compensation benefits, payment for medical treatment, or attorney fees arising out of an injury subject to this Chapter.

We recognize that claims involving "piercing the corporate veil doctrine" fall under the Business Corporation Law found in Title 12 and do not arise out of the Workers' Compensation Act. *Covington v. A-Able Roofing, Inc.*, 95-1126 (La.App. 3 Cir. 3/6/96), 670 So.2d 611. Shermane had to file this action in district court.

Additionally, La.R.S. 23:1101(A) provides that an employee who has a workers' compensation claim still has the right to also file a claim against third persons who may also be liable:

> When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as "third person") other than those persons against whom the said employee's rights and remedies are limited in R.S. 23:1032, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations, or personal representatives may

11

obtain damages from or proceed at law against such third person to recover damages for the injury, or compensable sickness or disease.

Therefore, pursuant to La.R.S. 23:1310.3(F) and La.R.S. 23:1101(A), Shermane's right to proceed against the Stegalls was also specifically excepted from the exclusive jurisdiction of the Workers' Compensation Act as an executory suit for damages against third parties seeking to establish their personal liability for the debts of her employer, Global.

As a specific exception to the rule that the Office of Workers' Compensation has exclusive jurisdiction, we find the district court properly applied La.R.S. 23:1201(G) in awarding attorney fees in this case. The district court was specifically granted jurisdiction in this case to determine a third party's liability to Shermane for payment of a workers' compensation judgment. Louisiana Revised Statutes 23:1201(G) provides for the payment of attorney fees when an award payable under the terms of a final, nonappealable judgment is not paid within thirty days. Nowhere does the statute limit its applicability to that of an employer or insurer whom has become liable for payment of the judgment under the workers' compensation law. When William and Bill became liable individually for payment of the outstanding workers' compensation judgment, the district court could apply La.R.S. 23:1201(G) and award attorney fees.

## REDUCTION OF JUDGMENT AMOUNT

The defendants claim that the amount of the judgment should be reduced to no more than $50,000.00. They argue that they originally requested a jury trial but waived the jury trial after Shermane filed a stipulation to limit the amount of damages to $50,000.00.

The judgment sought to be made executory included the original settlement amount of damages in the amount of $35,000.00 from the October 20, 2006 judgment in addition to an $8,400.00 penalty and $1,000.00 in attorney fees also awarded in the December 13, 2006 judgment. The trial court then awarded an additional $10,000.00 in attorney fees for a total judgment of $54,400.00.

> The term "cause of action" in [La.Code Civ.P.] art. 1732 is not synonymous with the term "amount in controversy" and does not refer to the amount of plaintiff's overall claim arising out of the transaction or occurrence. *See, Benoit v. Allstate Ins. Co.*, 2000-0424 (La.11/28/00), 773 So.2d 702. Generally, the amount in dispute does not include interest, court costs, attorney fees, or penalties, whether provided by agreement or by law. La. C.C.P. art. 4.

*Wallace v. State Farm Mut. Auto. Ins.*, 36, 099, p. 8 (La.App 2 Cir. 6/14/02), 821 So.2d 704.

Excluding the attorney fees and penalty, the cause of action is only $35,000.00, well below the $50,000.00 stipulated amount.

Furthermore, a review of the joint stipulation states that the "amount of damages" and "award of damages" would not exceed $50,000.00 exclusive of accrued legal interest and court costs. There was no limitation on penalties and attorney fees. This is because at the time the stipulated judgment was entered into, penalties and attorney fees were not at issue. There is no merit to this assignment of error.

## PRO-RATA SHARE OF THE DEBT

The defendants argue that Bill cannot be held liable for more that his pro-rata share of the debt, i.e. 50%. They argue that the same rule for dissolution under La.R.S. 12:1341 should apply, which provides that a member cannot be held liable for more than his pro-rata share of the debt owed to a third party upon dissolution.

However, La.R.S. 12:1320 providing for liability of members to third parties does not limit a member's liability to a third party.  This is because the liability of the member is not based on his negligence as a member in the limited liability company but based on his own personal negligent or wrongful act.  *Regions Bank v. Ark-La-Tex Water Gardens, L.L.C.*, 43,604 (La.App. 2 Cir. 11/5/08), 997 So.2d 734, *writ denied*, 09-16 (La. 3/13/09), 5 So.3d 119.  The limited liability law was not intended to shield professionals from liability for personal negligence.  *Id.*

Therefore, the trial court was correct in finding that the defendants should be held liable in solido for the debt to Shermane.

For these reasons, the judgment of the trial court is affirmed.  Costs of this appeal are assessed to William A. Stegall, Jr. and William A. Stegall, Sr.

**AFFIRMED.**